Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/16/2018 09:10 AM CST

In re Estate of Hilda M. Graham, deceased.
Merle Gallagher and Linda Clarke,
appellants, v. Gregory G.
Graham, appellee.

___ N.W.2d ___

Filed November 16, 2018.   No. S-17-1296.

1. **Decedents' Estates: Appeal and Error.** Appeals of matters arising
   under the Nebraska Probate Code are reviewed for error on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors
   appearing on the record, an appellate court's inquiry is whether the deci-
   sion conforms to the law, is supported by competent evidence, and is
   neither arbitrary, capricious, nor unreasonable.
3. **Decedents' Estates: Attorney Fees.** Ordinarily, the fixing of reasonable
   compensation, fees, and expenses, pursuant to Neb. Rev. Stat. § 30-2480
   (Reissue 2016), governing compensation of personal representatives;
   Neb. Rev. Stat. § 30-2481 (Reissue 2016), governing expenses in estate
   litigation; and Neb. Rev. Stat. § 30-2482 (Reissue 2016), governing
   compensation of personal representatives and employees of the estate, is
   within the sound discretion of the county court.
4. **Attorney Fees: Appeal and Error.** When an attorney fee is authorized,
   the amount of the fee is addressed to the trial court's discretion, and its
   ruling will not be disturbed on appeal absent an abuse of discretion.
5. **Pretrial Procedure: Appeal and Error.** Determination of an appropri-
   ate sanction for failure to comply with a proper discovery order initially
   rests with the discretion of the trial court, and its rulings on appropriate
   sanctions will not be disturbed on appeal absent a showing of an abuse
   of that discretion.
6. **Rules of the Supreme Court: Appeal and Error.** The cross-appeal
   section of an appellate brief must set forth a separate title page, a table
   of contents, a statement of the case, assigned errors, propositions of law,
   and a statement of the facts.

7. ____: ____. When a brief of an appellee fails to present a proper cross-appeal pursuant to Neb. Ct. R. App. P. § 2-109 (rev. 2014), an appellate court declines to consider its merits.

8. **Appeal and Error.** Absent plain error, an appellate court considers only an appellant's claimed errors that the appellant specifically assigns in a separate "assignment of error" section of the brief and correspondingly argues in the argument section.

9. **Decedents' Estates: Executors and Administrators: Courts: Jurisdiction.** A probate court's jurisdiction and authority continue until an executor or administrator has fully complied with all its judgments, orders, and decrees and the estate has been placed in the possession of whom it devolves.

10. **Decedents' Estates: Courts: Jurisdiction.** Pursuant to Neb. Rev. Stat. § 30-2473 (Reissue 2016), county courts in ongoing probate proceedings have jurisdiction over surcharge motions brought against former personal representatives to recover losses to the decedent's estate arising from an alleged breach of fiduciary duty.

11. **Decedents' Estates: Executors and Administrators: Damages: Proof.** A beneficiary or designee seeking a surcharge against the personal representative for conversion, damage, or loss of estate property has the burden of proving that (1) a fiduciary duty was breached, (2) the breach of the fiduciary duty caused the losses alleged, and (3) the extent of those damages.

Appeal from the County Court for Douglas County: Thomas K. Harmon, Judge. Affirmed.

Howard Kaiman and Edward W. Hasenjager for appellants.

Norman Denenberg for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.
## NATURE OF CASE
The designees of the decedent's estate appeal the county court's determination that the evidence was insufficient to prove damages for the conversion of estate property purportedly caused by the personal representative who was removed

for breaches of fiduciary duties. They also assert that the personal representative should have been surcharged for the attorney fees and successor personal representative fees because of his breaches of fiduciary duties and alleged frivolous defense to his removal. We affirm.

## FACTS

### Removal of Personal Representative and Personal Property Damages

Gregory G. Graham (Graham) was the designated personal representative of the estate of Hilda M. Graham, who died on September 5, 2013. In accordance with the decedent's last will and testament, Graham's appointment as the personal representative followed.

A dispute developed between Graham and two interested parties in the estate, Merle Gallagher and Linda Clarke. Both Gallagher and Clarke were to inherit from the decedent's will. Specifically, Clarke was to receive a "Peanuts collection" of figurines and Gallagher was to inherit full ownership of the decedent's home, as well as the residual estate. After Graham distributed the personal property pursuant to the decedent's will, Gallagher and Clarke alleged that they did not receive the entirety of what was bequeathed to them. As a result, they sought to have Graham removed as personal representative.

After a hearing, Graham was removed as personal representative of the estate and a successor personal representative, Edward Kasl, was appointed by the county court. Graham subsequently appealed that decision, and in case No. S-14-804, an unpublished memorandum opinion dated May 21, 2015, we reversed. We held that the county court erred in removing Graham as personal representative without having heard his evidence and testimony. We also held that the court erred in awarding damages when such relief was not requested. We remanded the matter, ordering a new hearing and directing that the case be reassigned to a new judge.

At the hearing on remand, exhibit 101 was offered, but the county court sustained Graham's relevancy objection to exhibit 101 and did not receive it into evidence. Exhibit 101 consists of the entire bill of exceptions for the proceedings leading up to the order that we reversed in our memorandum opinion.

Gallagher and Clarke again presented evidence in support of Graham's removal. They also moved for the court to assess damages against Graham for the alleged conversion, damage, or loss of estate property. Gallagher and Clarke testified that Graham maintained exclusive control over the real estate, as well as its contents, for a period in excess of 90 days after the decedent's death and failed to properly inventory the contents of the residence or provide an accounting of how the nonprobate estate assets were disposed of during that time.[1]

In support of their claims that certain items were stolen, damaged, or lost, Gallagher and Clarke offered testimony from various witnesses that the decedent, at some point before she died, had at least three jewelry boxes full of "expensive" jewelry. Gallagher and Clarke testified that the decedent had several items of "nice" clothing, various tools, and a number of documents in her home before her death. All of these items were absent from the decedent's home at the time the keys to her home were finally transferred to Gallagher.

The court also received into evidence pictures of the decedent wearing certain pieces of jewelry from her collection. Additional testimony was received that, while attending the decedent's funeral, Gallagher observed Graham's wife wearing a pendant and a locket allegedly owned by the decedent.

Clarke testified that she had seen the decedent's figurine collection in the past. She stated that it filled an entire hallway closet. When she arrived at Graham's attorney's office to retrieve the figurines she was to inherit, some were broken while others were completely missing.

---

[1] See Neb. Rev. Stat. § 30-2467 (Reissue 2016).

Graham testified that he was out of town for work during the months following the decedent's death. As a result, Graham was unable to transfer the keys to the home to Gallagher. But he claimed that he had told Gallagher to contact Graham's attorney for further information about obtaining the keys.

Graham attested that he emptied the entire contents of the decedent's home and transferred the property to his home for safekeeping. He then transferred some of the property to his attorney's office for distribution, but donated many articles of the decedent's clothing. Graham testified that he delivered all property that was to be distributed to interested parties to his attorney's office.

An inventory document was prepared by Graham's attorney which set forth the items of personal property retrieved by Gallagher and Clarke at his office. Both Gallagher and Clarke signed this inventory document to indicate that they had received the items that were bequeathed to them. However, Gallagher and Clarke took exception to the contents of that inventory document, claiming Graham failed to list several items owned by the decedent that were in her home at the time of her death.

Graham maintained that the property he distributed was all that remained in the decedent's home after her death. It was undisputed that Graham and Gallagher were both at the home near the time of the decedent's death, but neither made a list of what was in the home. Both testified that hospice workers were also in and out of the home during the decedent's final days.

On April 25, 2016, the court removed Graham as personal representative with an additional order that his status was terminated rather than discharged so he would remain responsible for any misdeeds he may have committed while acting as personal representative. The county court found that Graham had acted negligently and improvidently in denying access and then in failing to either protect or inventory the contents of the residence which he maintained under his exclusive control.

Thus, the court found that he had breached his fiduciary duty as a personal representative as it related to the filing of an inventory concerning personal property when he took control of nonprobate assets. Graham did not appeal within 30 days of the April 25 order.

In a subsequent order on September 26, 2017, the court denied Gallagher and Clarke's motion to assess damages against Graham for his conversion, damage, or loss of estate property. The court reasoned that, based on the evidence presented, it could not determine beyond mere speculation whether or not Graham had converted, damaged, or lost assets of the estate.

## Attorney Fees and Personal Representative Fees

In addition to damages, Gallagher and Clarke sought attorney fees and personal representative fees for Kasl. Kasl had obtained counsel and performed services for the benefit of the estate, such as obtaining records from banks and attending meetings with his counsel while the first appeal was pending.

In its September 26, 2017, order, the county court awarded personal representative fees to Kasl to be paid from the estate. The court also awarded attorney fees to the attorney representing Gallagher, Clarke, and Kasl for services rendered on behalf of Kasl as successor personal representative. These fees were also to be paid from the estate.

In an order on April 26, 2016, the court appointed a second successor personal representative to close the estate. Graham was ordered to provide a full and complete inventory of all the decedent's personal property as well as an account of his actions as personal representative. Graham failed to comply with this court order. As a result of his noncompliance and his prior-held breaches of his fiduciary duty, the court ordered as a form of sanction that Graham pay the second successor personal representative's fees personally.

Sanctions for Destruction of
Document After Ordered
to Compel

Gallagher and Clarke asserted that sanctions should be imposed on either Graham or his attorney for the spoliation of a document that they asserted could be relevant to the estate. Prior to her death, the decedent met with the attorney for Graham in this case to prepare a will and draft a deed to convey her home to Gallagher while she was still living. Gallagher was present at this meeting. Graham's attorney drafted both the will and the deed shortly after their meeting. According to the attorney, although the decedent requested that a deed be prepared, she later decided that the real property would be conveyed to Gallagher by will instead.

After the commencement of the probate proceedings, Gallagher's attorneys sought to compel the production of the deed three times. In September 2015, the county court ordered Graham to produce the deed. However, Graham's attorney testified that he purposefully "trashed" the document approximately 4 months after the decedent's death, stating he believed that it was attorney work product and not relevant because it was never delivered.

After an evidentiary hearing related to attorney fees in April 2017, Gallagher and Clarke submitted a written closing argument requesting that the court levy $3,000 in attorney fees as a sanction against Graham for the destruction of this deed. The county court rejected this request for sanctions in its September 26 order.

## ASSIGNMENTS OF ERROR

On appeal, Gallagher and Clarke assign, reordered and rephrased, that the county court erred by not (1) awarding damages for Graham's conversion, damage, or loss of property; (2) awarding fees to the successor personal representative, Kasl, personally against Graham by way of surcharge; (3) awarding

attorney fees and costs personally against Graham by way of surcharge; (4) imposing sanctions against Graham or his attorney for the destruction of a deed of conveyance of real estate executed by the deceased in favor of Gallagher; and (5) receiving into evidence exhibit 101.

Although Graham attempts to cross-appeal, the format and substance of his brief on cross-appeal fail to adhere to the briefing requirements found in Neb. Ct. R. App. P. § 2-109 (rev. 2014). As such, we decline to address his assignments of error on cross-appeal.

## STANDARD OF REVIEW

[1,2] Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record.[2] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3] When reviewing a decision of the probate court, the appellate court does not reweigh the evidence and must consider the evidence in the light most favorable to the successful party, who is entitled to every reasonable inference available from the evidence.[4]

[3] Ordinarily, the fixing of reasonable compensation, fees, and expenses, pursuant to Neb. Rev. Stat. § 30-2480 (Reissue 2016), governing compensation of personal representatives; Neb. Rev. Stat. § 30-2481 (Reissue 2016), governing expenses in estate litigation; and Neb. Rev. Stat. § 30-2482 (Reissue 2016), governing compensation of personal representatives and employees of the estate, is within the sound discretion of the county court.[5]

---

[2] *In re Estate of Gsantner*, 288 Neb. 222, 846 N.W.2d 646 (2014).

[3] *Id.*

[4] *In re Estate of Lamplaugh*, 270 Neb. 941, 708 N.W.2d 645 (2006).

[5] See *In re Estate of Odineal*, 220 Neb. 168, 368 N.W.2d 800 (1985).

[4] When an attorney fee is authorized, the amount of the fee is addressed to the trial court's discretion, and its ruling will not be disturbed on appeal absent an abuse of discretion.[6]

[5] Determination of an appropriate sanction for failure to comply with a proper discovery order initially rests with the discretion of the trial court, and its rulings on appropriate sanctions will not be disturbed on appeal absent a showing of an abuse of that discretion.[7]

## ANALYSIS

### Issues Not Properly Raised on
### Appeal and Cross-Appeal

As a threshold matter, we must determine what assignments of error were properly raised and argued on appeal.

[6] As stated above, Graham did not properly cross-appeal. Section 2-109(D)(4) of our court rules of appellate practice provides:

> Where the brief of appellee presents a cross-appeal, it shall be noted on the cover of the brief and it shall be set forth in a separate division of the brief. This division shall be headed "Brief on Cross-Appeal" and shall be prepared in the same manner and under the same rules as the brief of appellant.

Thus, the cross-appeal section of an appellate brief must set forth a separate title page, a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of the facts.[8]

[7] Graham's cross-appeal section fails to set forth a separate title page, a table of contents, a statement of the case, assigned errors, or propositions of law. When a brief of an appellee fails to present a proper cross-appeal pursuant to § 2-109, we

---

[6] *In re Estate of Chrisp*, 276 Neb. 966, 759 N.W.2d 87 (2009).

[7] *Mandolfo v. Mandolfo*, 281 Neb. 443, 796 N.W.2d 603 (2011).

[8] See *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015).

decline to consider its merits.[9] As such, we do not consider the merits of Graham's purported cross-appeal.

[8] Gallagher and Clarke, in their appellate brief, assign as error that the county court erred in not receiving exhibit 101 into evidence, but they fail to argue this assignment of error substantively in their brief. Absent plain error, an appellate court considers only an appellant's claimed errors that the appellant specifically assigns in a separate "assignment of error" section of the brief and correspondingly argues in the argument section.[10] Because Gallagher and Clarke failed to argue this assignment of error in the argument section of their brief, and we do not find plain error in the county court's ruling, we will not consider it.

We turn now to the issues on appeal that were properly presented. Those are whether the county court erred in failing to (1) award damages against Graham for conversion, damage, or loss of property; (2) assess successor personal representative fees on Graham personally by way of surcharge; and (3) award attorney fees for the motions to remove and surcharge Graham.

### Conversion, Damage, or Loss of Estate Property

[9] Gallagher and Clarke argue that the court erred in failing to find that Graham converted, damaged, or lost property bequeathed to them, and in failing to order Graham to pay damages to the estate accordingly. Generally, the county court has exclusive original jurisdiction over all matters relating to decedents' estates.[11] The relevant portion of the Nebraska Probate Code, Neb. Rev. Stat. § 30-2473 (Reissue 2016),

---

[9] See *id.*

[10] *C.E. v. Prairie Fields Family Medicine*, 287 Neb. 667, 844 N.W.2d 56 (2014).

[11] See Neb. Rev. Stat. § 24-517 (Supp. 2017). See, also, *Line v. Rouse*, 241 Neb. 779, 491 N.W.2d 316 (1992).

provides that "the personal representative is liable to interested persons for damage or loss resulting from breach of his fiduciary duty." It has been held that county courts have plenary powers for the exercise of that jurisdiction.[12] A probate court's jurisdiction and authority continue until an executor or administrator has fully complied with all its judgments, orders, and decrees and the estate has been placed in the possession of whom it devolves.[13]

[10] Pursuant to § 30-2473, county courts in ongoing probate proceedings have jurisdiction over surcharge motions brought against former personal representatives to recover losses to the decedent's estate arising from an alleged breach of fiduciary duty.[14] Our courts have thus reviewed the merits of surcharge motions that have claimed damages to the estate sustained from the personal representative's breach of fiduciary duty by wrongfully loaning funds of the estate,[15] attempting to sell real estate within the residuary estate to the general public as opposed to the decedent's family,[16] and failing to file federal estate tax returns.[17] Though we have never addressed a motion to surcharge the personal representative for his or her direct conversion, damage, or loss of the decedent's former personal property, we conclude that such a motion is properly brought within the probate proceeding, because the facts underlying such motions ultimately concern the probate of the decedent's will and the distribution of the decedent's property.

---

[12] *Klug v. Seegabarth*, 98 Neb. 272, 152 N.W. 385 (1915).

[13] *In re Estate of Statz*, 144 Neb. 154, 12 N.W.2d 829 (1944).

[14] See, *In re Estate of Watkins*, 243 Neb. 583, 501 N.W.2d 292 (1993); *In re Estate of Statz, supra* note 13; *In re Estate of Snover*, 4 Neb. App. 533, 546 N.W.2d 341 (1996). Compare *Line v. Rouse, supra* note 11. See, also, 31 Am. Jur. 2d *Executors and Administrators* § 847 (2012) (stating generally that court may surcharge personal representative for breach of duty).

[15] *In re Estate of Statz, supra* note 13.

[16] *In re Estate of Watkins, supra* note 14.

[17] *In re Estate of Snover, supra* note 14.

Gallagher and Clarke's motion seeking damages for conversion, damage, or loss of estate property, while not using the word "surcharge," was in substance a motion to surcharge the personal representative for his breach of fiduciary duty. The county court had jurisdiction to determine whether Graham should restore to the estate the property improperly converted, damaged, or lost as a result of Graham's alleged breach of duty in his capacity as personal representative for the estate. We next determine whether the court erred in denying the motion.

We have never specifically addressed the burden of proof for motions to surcharge. In other jurisdictions, parties seeking surcharge have the burden of proving that the representative failed to meet his or her duty of care.[18] Placing the burden on the movant is also consistent with other claims of breach of fiduciary duty in which the plaintiff is required to prove that the defendant's breach of fiduciary duty caused the plaintiff damages and the extent of those damages.[19] And this burden is consistent with the general principle of trust law that "[w]hen a plaintiff brings suit against a trustee for breach of trust, the plaintiff generally bears the burden of proof."[20] Under Nebraska's trust law related to fraud, a beneficiary establishes a prima facie case of fraud by showing that a trustee's transaction benefited the trustee at the beneficiary's expense.[21]

[11] Consistent with these principles, we hold that the party seeking a surcharge carries the burden to show that the representative failed to meet his or her duty of care.[22] A

---

[18] 31 Am. Jur. 2d, *supra* note 14, § 848; 34 C.J.S. *Executors and Administrators* § 1024 (2009).

[19] *McFadden Ranch v. McFadden*, 19 Neb. App. 366, 807 N.W.2d 785 (2011).

[20] Restatement (Third) of Trusts § 100, comment *f.* at 68 (2012).

[21] *In re Estate of Hedke*, 278 Neb. 727, 775 N.W.2d 13 (2009).

[22] See, e.g., 31 Am. Jur. 2d, *supra* note 14, § 848; 34 C.J.S., *supra* note 18.

beneficiary or designee seeking a surcharge against the personal representative for conversion, damage, or loss of estate property has the burden of proving that (1) a fiduciary duty was breached, (2) the breach of the fiduciary duty caused the losses alleged, and (3) the extent of those damages.[23]

In this case, the county court found that while Graham breached his fiduciary duty as personal representative by failing to properly inventory the estate's property, Gallagher and Clarke had failed to prove that Graham's breach involved or resulted in the conversion, damage, or loss of the decedent's personal property that allegedly was in her home when Graham took possession. We conclude that the county court's decision in this regard conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

The record indicates that Graham and Gallagher were not the only people visiting the decedent's home before her death. Gallagher and Graham testified that hospice workers frequented the home during the decedent's final weeks. Further, there was no evidence presented to prove that the decedent did not simply dispose of the property herself. Graham testified that he delivered all property that was to be distributed to interested parties to his attorney's office.

The county court was not unreasonable in concluding, based upon the evidence presented, that it could not be assumed that there was malfeasance by Graham nor could it be presumed that he acted honestly. In other words, the county court did not err in concluding that Gallagher and Clarke had failed to meet their burden to show that Graham had breached a fiduciary duty, causing the losses alleged, and the extent of those damages.

---

[23] See, *Lefkowitz v. Bank of New York*, 676 F. Supp. 2d 229 (S.D.N.Y. 2009); *In re Estate of Hedke, supra* note 21; *McFadden Ranch v. McFadden, supra* note 19.

SUCCESSOR PERSONAL
REPRESENTATIVE FEES

Gallagher and Clarke next assert that the court erred in
ordering Kasl's fees to be paid out of the estate rather than
by Graham personally. Gallagher and Clarke rely on the lan-
guage of § 30-2473 that "[i]f the exercise of power concerning
the estate is improper, the personal representative is liable to
interested persons for damage or loss resulting from breach of
his fiduciary duty to the same extent as a trustee of an express
trust." They assert that Graham's breach was the proximate
cause of Kasl's fees and that therefore, Graham should be
required to pay Kasl's fees.

Under § 30-2480, a personal representative is entitled to
reasonable compensation; under § 30-2481, a personal repre-
sentative who defends or prosecutes any proceeding in good
faith is entitled to receive from the estate his or her necessary
expenses and disbursements; and under § 30-2482, the reason-
ableness of the compensation determined by the personal rep-
resentative for his or her own services may be reviewed by the
court. We have held that the fixing of reasonable compensation
is within the sound discretion of the county court.[24]

We have permitted any person beneficially interested in
the estate embraced in an administration account to cite the
executor or administrator to file an account, object, or file
objections to the terms or matters contained in the account,
and the personal representative in a proper proceeding may
be surcharged with losses occurring because of a breach
of trust.[25] An action to surcharge a personal representative
may be brought to recover losses to the estate for an alleged
breach of fiduciary duty by the personal representative.[26]
The measure of damages is the monetary damage to the

---

[24] *In re Estate of Odineal, supra* note 5.

[25] *In re Estate of Statz, supra* note 13.

[26] *Line v. Rouse, supra* note 11.

estate caused by the personal representative's breach of fiduciary duties.[27]

However, Gallagher and Clarke fail to present any statutory authority or case law which mandates that a county court must assess against the removed personal representative the successor personal representative's fees and expenses. In the instant matter, it is unclear from the record exactly how or to what extent Graham's breach of fiduciary duty caused the estate to incur additional personal representative fees. The record indicates that at the time of Kasl's appointment, further actions were necessary to close the estate either by the original personal representative or by the successor personal representative, such as preparing inventories and accountings and determining an inheritance tax. Further, the record indicates that a portion of Kasl's actions as successor personal representative were in line with the actions Graham would have needed to complete had he continued as personal representative, including dealing with the ongoing litigation.

We note that the county court's order requiring Graham to personally pay the second successor personal representative's fees is distinguishable from its denial of Gallagher and Clarke's request to surcharge Graham for Kasl's fees. According to the county court's September 26, 2017, order, Graham was required to pay the second successor personal representative's fees as a form of sanction as a result of his noncompliance to prior court orders and in contemplation of his prior-held breaches of his fiduciary duty.

When reviewing a decision of the probate court, the appellate court does not reweigh the evidence and must consider the evidence in the light most favorable to the successful party, who is entitled to every reasonable inference deducible from the evidence.[28] We conclude that the probate court

---

[27] *Id.*

[28] *In re Estate of Lamplaugh, supra* note 4.

did not abuse its discretion by refusing to order Graham be personally responsible for Kasl's successor personal representative fees.

### Attorney Fees for Claims
### of Removal and Damage
### to Estate Property

Gallagher and Clarke also assign as error that the county court erred in declining to award them, either from the estate or against Graham, the attorney fees they incurred while litigating their motion to remove Graham as personal representative and their motion to surcharge Graham for conversion, damage, or loss of estate property. As a general rule, attorney fees and expenses are recoverable only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.[29]

In Gallagher and Clarke's argument to the probate court for attorney fees incurred in litigating their motions to remove and to surcharge, they failed to point to any statute or uniform course of procedure for such an award. They merely argued that because of Graham's breach of his fiduciary duty, they were required to act in the protection of their interests by bringing the removal action and, therefore, were entitled to recover the entirety of their attorney fees. Based on the arguments presented below, the county court did not abuse its discretion in refusing to award additional attorney fees beyond those incurred for Kasl's representation.

On appeal, Gallagher and Clarke raise for the first time that attorney fees were proper under Neb. Rev. Stat. § 25-824(4) (Reissue 2016), which governs frivolous claims or defenses in civil proceedings. We have never held that § 25-824 applies to probate proceedings, and appellate courts do not

---

[29] *Simon v. City of Omaha*, 267 Neb. 718, 677 N.W.2d 129 (2004). See, also, *In re Estate of Snover, supra* note 14 (applying this principal in probate case).

generally consider arguments and theories raised for the first time on appeal.[30] Applying that principle, we decline to address Gallagher and Clarke's frivolous defense theory for attorney fees.

## ATTORNEY FEES AS
## DISCOVERY SANCTION

Gallagher and Clarke also argue that Graham's attorney's destruction of a deed of conveyance, after Graham had been compelled and ordered to turn over the document, warranted discovery sanctions in the form of attorney fees. The county court declined to impose sanctions on Graham or Graham's attorney with regard to the destruction, but, as discussed, did sanction Graham for his failure to provide the second successor personal representative an account of his actions as personal representative. The determination of an appropriate sanction for failure to comply with a proper discovery order initially rests with the discretion of the trial court, and its rulings on appropriate sanctions will not be disturbed on appeal absent a showing of an abuse of that discretion.[31]

Sanctions for failing to comply with court-ordered discovery are governed under Neb. Ct. R. Disc. § 6-337, commonly referred to as "Rule 37." Rule 37 sanctions serve several purposes. First, they punish a litigant or counsel who might be inclined to frustrate the discovery process.[32] Second, they deter those who are tempted to break the rules.[33] Finally, they prevent parties who have failed to meet their discovery obligations from profiting from their misconduct.[34] Relevant factors that are reviewed when determining whether a sanction is

---

[30] *Maroulakos v. Walmart Associates*, 300 Neb. 589, 915 N.W.2d 432 (2018).

[31] *Booth v. Blueberry Hill Restaurants*, 245 Neb. 490, 513 N.W.2d 867 (1994).

[32] *Hill v. Tevogt*, 293 Neb. 429, 879 N.W.2d 369 (2016).

[33] *Id.*

[34] *Id.*

appropriate include the prejudice or unfair surprise suffered by the party seeking sanctions, the importance of the evidence which is the root of the misconduct, whether the court warned the sanctioned party about the consequences of its misconduct, whether the court considered less drastic sanctions, the sanctioned party's history of discovery abuse, and whether the sanctioned party acted willfully or in bad faith.[35]

We conclude that the court did not abuse its discretion by refusing to impose sanctions on Graham or his counsel for destruction of the deed of conveyance. In considering the above factors, this deed of conveyance would not have and did not prejudice or unfairly surprise Gallagher and Clarke. In fact, the residence was already conveyed by will to Gallagher when the probate proceedings commenced,[36] and Gallagher and Clarke do not explain on appeal how they were prejudiced by any possible delay between the time of the alleged deed and the conveyance by will. We cannot find that the county court's decision to decline sanctions in the form of attorney fees resulted in an outcome that was untenable and unfairly deprived the litigants of a substantial right or a just result.

## CONCLUSION

For the reasons stated above, we affirm the county court's judgment in this matter.

AFFIRMED.

---

[35] *Id.*

[36] See *Hagn v. Verret*, 143 Neb. 820, 11 N.W.2d 551 (1943).